[No. 23937-3-III.   Division Three.   October 17, 2006.]

THE STATE OF WASHINGTON, *Respondent*, v. TERRY TY KUHLMAN, *Appellant*.

*James E. Egan* (of *James E. Egan, P.S.*), for appellant.

*Andrew K. Miller, Prosecuting Attorney,* and *Terry J. Bloor, Deputy,* for respondent.

¶1 KULIK, J. — Mr. Terry Kuhlman pleaded guilty to failure to register as a sex offender and was convicted of second degree trafficking in stolen property. On appeal, he asserts the trial court's use of his prior juvenile convictions in calculating his offender score violated his right to jury trial as articulated in *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). Mr. Kuhlman contends that the trial court imposed an exceptional sentence by setting the sentences on his two convictions to run consecutively rather than concurrently. We hold that juvenile adjudications fall within the prior conviction exception to *Blakely* and that imposition of consecutive standard range sentences does not constitute an exceptional sentence. We affirm.

## FACTS

¶2 Terry Kuhlman entered a plea of guilty to failure to register as a sex offender. Several days later, Mr. Kuhlman was convicted of second degree trafficking in stolen property. The trial court sentenced Mr. Kuhlman on both offenses, taking into consideration his prior juvenile adjudications.

¶3 The State requested consecutive sentences based on Mr. Kuhlman's unscored misdemeanor history and because of his high offender score. Mr. Kuhlman's offender score had reached the maximum of 9 before considering the current conviction for failure to register as a convicted sex offender. Because the defendant would have received no additional punishment for the failure to register conviction, the State specifically requested that the two sentences run consecutively rather than concurrently. The defendant had four previous convictions for failure to register as a sex offender. The trial court granted the State's request and imposed consecutive sentences. This appeal followed.

## ANALYSIS

*1. Did the trial court's use of Mr. Kuhlman's prior juvenile offenses in calculating his offender score violate his constitutional rights to a jury trial and due process?*

■ ¶4 A defendant has a constitutional right to have a jury determine whether the factors permitting an exceptional sentence have been established beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000); *Blakely*, 542 U.S. at 301. However, as explained in *Apprendi* and *Blakely*, facts relating to a prior conviction are an exception to the rule requiring any fact that increases the maximum statutory penalty be proved to a jury. *Apprendi*, 530 U.S. at 476; *Blakely*, 542 U.S. at 301. This exception is recognized because recidivism "is a traditional, if not the most traditional, basis for a sentencing court's increasing of an offender's sentence." *Almendarez-Torres v. United States*, 523 U.S. 224, 243, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998). Therefore, facts related to prior convictions are "potentially distinguishable for constitutional purposes from other facts that might extend the range of possible sentencing." *Jones v. United States*, 526 U.S. 227, 249, 119 S. Ct. 1215, 143 L. Ed. 2d 311 (1999).

¶5 Based on this exception, prior convictions do not need to be proved to a jury beyond a reasonable doubt in order to enhance a defendant's sentence. The issue for this court is whether juvenile adjudications fall within the prior convictions exception.[1]

### Due Process and Juvenile Adjudications

¶6 There is no Sixth Amendment right to a jury trial for juveniles. *McKeiver v. Pennsylvania*, 403 U.S. 528, 545, 91 S. Ct. 1976, 29 L. Ed. 2d 647 (1971). Likewise, the Wash-

---

[1] Generally, the failure to raise an issue at trial waives the issue on appeal. *See* RAP 2.5(a); *State v. Rangel-Reyes*, 119 Wn. App. 494, 498, 81 P.3d 157 (2003). However, an individual can challenge an illegal or erroneous sentence for the first time on appeal. *See, e.g., State v. Nitsch*, 100 Wn. App. 512, 519, 997 P.2d 1000 (2000).

ington Constitution has "not been construed to guarantee the right of trial by jury in juvenile proceedings." *Monroe v. Soliz*, 132 Wn.2d 414, 424, 939 P.2d 205 (1997). "Because of the differences between the juvenile justice system and the adult criminal system, the denial of a jury trial to juveniles has been repeatedly held constitutional." *State v. J.H.*, 96 Wn. App. 167, 170, 978 P.2d 1121 (1999).

¶7 Juvenile justice proceedings in this state are governed by the Juvenile Justice Act of 1977. *See* chapter 13.40 RCW. Under this statutory scheme, the juvenile justice system imposes lesser penalties than the adult criminal system which has a "punitive purpose and much more serious penalties." *J.H.*, 96 Wn. App. at 172. "The penalty, rather than the criminal act committed, is the factor that distinguishes the juvenile code from the adult criminal justice system." *State v. Schaaf*, 109 Wn.2d 1, 7-8, 743 P.2d 240 (1987). The difference in policy and procedure is largely because the primary responsibility of the juvenile justice system is to respond to the needs of juvenile offenders, and because of the age and vulnerability of juvenile offenders. *Monroe*, 132 Wn.2d at 419-20; *Schaaf*, 109 Wn.2d at 22. Based on these differences, a juvenile adjudication is not considered a conviction for a crime. *J.H.*, 96 Wn. App. at 174. However, juvenile adjudications are counted as criminal convictions under the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, if the offender being sentenced was charged as an adult. RCW 9.94A.030(14).

¶8 While there are significant substantive and procedural differences between juvenile adjudications and adult criminal convictions, all juvenile proceedings still must satisfy the basic requirements of due process and fairness. *In re Gault*, 387 U.S. 1, 12, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967). "Accused juveniles are provided their full range of constitutional rights such as the right to an attorney, to confront witnesses, the privilege against self-incrimination and suppression of evidence illegally obtained." *State v. Lawley*, 91 Wn.2d 654, 657, 591 P.2d 772 (1979).

*Use of Juvenile Adjudications in Sentencing*

¶9 The SRA treats an adult offender's juvenile adjudications as criminal convictions. RCW 9.94A.030(14). *Apprendi* and *Blakely* mandate that any fact *other than a prior conviction* that increases the maximum statutory penalty for a crime must be proved to a jury beyond a reasonable doubt. *Apprendi*, 530 U.S. at 476. Because there is no right to jury trial for juvenile offenders, courts have struggled with whether a prior juvenile adjudication should be treated as part of the *Apprendi-Blakely* prior convictions exception.

¶10 Two main approaches have emerged in response to this issue. A minority of courts have adopted the posture that juvenile adjudications must be separately proved to a jury beyond a reasonable doubt. *See, e.g., State v. Harris*, 339 Or. 157, 118 P.3d 236 (2005); *State v. Brown*, 03-2788 (La. 7/6/04), 879 So. 2d 1276, *cert. denied*, 543 U.S. 826 (2004). The majority approach, and the approach adopted by both Divisions One and Two of the Court of Appeals, looks to the overall due process protections of the juvenile justice system and deems juvenile adjudications to fall within the prior convictions exception. Under the majority approach, these convictions do not need to be proved to a jury beyond a reasonable doubt in order to enhance an adult offender's sentence.

¶11 In *State v. Weber*, 127 Wn. App. 879, 892-93, 112 P.3d 1287 (2005),[2] Division One concluded that the due process protections afforded in juvenile proceedings ensure that the fact-finding process is reliable without the need for a jury. Among the procedural guaranties for juvenile proceedings are the requirement of proof beyond a reasonable doubt, and the rights to counsel, to cross-examine witnesses, to notice of the charges, and the right against self-incrimination. *Id.* at 890. These procedural safeguards were deemed sufficient to bring prior juvenile adjudications within the prior conviction exception. *Id.* at 892.

---

[2] We note that the Supreme Court granted review of this decision on January 31, 2006. *See State v. Weber*, 156 Wn.2d 1010, 132 P.3d 147 (2006).

¶12 Division Two also held that juvenile adjudications fall within the prior convictions exception. *State v. Mounts*, 130 Wn. App. 219, 222, 122 P.3d 745 (2005), *petition for review filed*, 2006 Wash. LEXIS 639 (Sept. 6, 2006). Like *Weber*, *Mounts* found that the process that resulted in juvenile adjudications "was not significantly less reliable than the adult court system." *Id*. As such, trial courts are constitutionally permitted to use evidence of prior juvenile adjudications when calculating offender scores. *Id*.

¶13 At least three other circuit courts of appeal have joined in this conclusion. *See United States v. Burge*, 407 F.3d 1183, 1187-91 (11th Cir.), *cert. denied*, 546 U.S. 981 (2005); *United States v. Jones*, 332 F.3d 688, 696 (3d Cir. 2003), *cert. denied*, 540 U.S. 1150 (2004); *United States v. Smalley*, 294 F.3d 1030, 1033 (8th Cir. 2002). So have numerous other state courts. *See, e.g., Greist v. State*, 121 P.3d 811, 814 (Alaska Ct. App. 2005); *Nichols v. State*, 910 So. 2d 863, 865 (Fla. Dist. Ct. App. 2005); *Ryle v. State*, 842 N.E.2d 320, 322 (Ind. 2005); *State v. Hitt*, 273 Kan. 224, 235-36, 42 P.3d 732 (2002).

■ ¶14 We conclude that, although juvenile and adult offenders are not allocated identical rights under the constitution, every juvenile offender is guaranteed the protections of due process under the constitution. Moreover, there are substantial procedural rights afforded to juveniles in Washington that help make the results of juvenile proceedings reliable. Because of the constitutionally required procedural safeguards in juvenile proceedings, we hold that juvenile adjudications fall within the prior convictions exception and can be used in setting an adult offender's sentence.

*2. Did the trial court violate the constitutional requirements of* Blakely *by engaging in a "free crimes" analysis to support its imposition of consecutive sentences?*

■ ¶15 The constitutional guaranties of due process and the right to a jury trial under the Fifth, Sixth, and Fourteenth Amendments require that any fact other than a

prior conviction that increases the maximum statutory penalty for a crime must be proved to a jury beyond a reasonable doubt. *Apprendi*, 530 U.S. at 476. The maximum statutory penalty is "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Blakely*, 542 U.S. at 303. Consequently, a judge may not make any additional findings of fact that increase the maximum statutory penalty without invading upon the defendant's right to a jury trial. *Id.*

¶16 Here, Mr. Kuhlman asserts that the trial court imposed an exceptional sentence—and therefore exceeded the maximum statutory penalty—by deciding that Mr. Kuhlman's sentences were to be served consecutively rather than concurrently. Mr. Kuhlman supports this assertion by noting that the trial court referred to the consecutive sentences as an "exceptional sentence." Clerk's Papers at 97-99.

¶17 *Blakely* and *Apprendi* do not apply to consecutive sentencing decisions, provided that each individual sentence was within the statutory maximum for that particular offense. *State v. Louis*, 155 Wn.2d 563, 572, 120 P.3d 936 (2005); *State v. Cubias*, 155 Wn.2d 549, 554-55, 120 P.3d 929 (2005). Here, Mr. Kuhlman received consecutive sentences of 3 months for the charge of failure to register as a sex offender and 60 months for second degree trafficking in stolen property. Each of these sentences was within the statutory maximum for that offense. Therefore, Mr. Kuhlman's sentences did not exceed any maximum statutory penalty. Accordingly, the trial court did not err in imposing consecutive sentences based upon Mr. Kuhlman's unscored misdemeanor history, his likelihood of recidivism, and the court's determination that the standard sentence was clearly too lenient.

¶18 We affirm.

SCHULTHEIS, A.C.J., and BROWN, J., concur.