158 P.3d 102 (2007)
STATE of Washington, Respondent,
v.
Bryan Montez JAMES, Appellant.
No. 24477-6-III.
Court of Appeals of Washington, Division 3.
May 17, 2007.
*105 Janet G. Gemberling, Gemberling & Dooris PS, Spokane, WA, for Appellant.
Kevin Michael Korsmo, Attorney at Law, Spokane, WA, for Respondent.
BROWN, J.
¶ 1 Bryan Montez James represented himself at trial. The jury found him guilty of two counts of attempted murder and one count of unlawful possession of a firearm. He appeals, contending the court erred in allowing self-representation. He further contends (1) insufficient evidence supports his attempted murder convictions, (2) police officers' testimony violated his confrontation rights, (3) use of his juvenile convictions to determine his offender score violates his right to a jury trial under Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and (4) insufficient evidence to prove his offender score. We hold Mr. James unequivocally waived his right to counsel. Finding no other error, we affirm.

*106 FACTS
¶ 2 On June 27, 2004 at 3:24 a.m., Spokane Police Officer Joel Fertakis responded to a shooting call at Crestline and Illinois in Spokane. He found Nicholas Schelin and Richard Payne bleeding from gunshot wounds. An unidentified witness led officers to Bryan James. Evidence showed Mr. James drove slowly past the victims as they stood on the sidewalk, leaned over his girl friend Marie Vialpando who was in the passenger seat, and shot the men.
¶ 3 Mr. James was charged with two counts of attempted first degree premeditated murder or, in the alternative, two counts of attempted felony murder with a predicate felony of first degree assault, and one count of unlawful possession of a firearm.
¶ 4 Before trial, Mr. James demanded in writing to act pro se. Judge Kathleen O'Connor reviewed the risk factors in a colloquy in response to Mr. James' demand. She reviewed the offenses and the maximum penalties with Mr. James. She reviewed his education, lengthy criminal history, and lack of experience with a complete trial. She informed Mr. James of the basic trial requirements and complexities, such as jury selection, evidence rules, examining witnesses, closing arguments, and jury instructions. Mr. James repeatedly informed the court he understood his decision to act pro se. When questioned about trial procedure, Mr. James said he did not understand everything, but would "hit the law library" to learn. Report of Proceedings (RP) (Mar. 10, 2005) at 14. She indicated Mr. James needed to think about affirmative defenses.
¶ 5 Judge O'Connor repeatedly asked Mr. James if he understood. Twice Mr. James seemed unsure, once stating: "I'm not even sure what I am supposed to be asking, you know. I mean, I thought if I could, I just wanted another lawyer, counsel or defense lawyer or something because I don't trust this guy." RP (Mar. 10, 2005) at 20-21. Judge O'Connor responded: "I don't have any motion before me that would support that. I think we had this discussion and I said you had to give me something and I've never seen anything." RP (Mar. 10, 2005) at 20.
¶ 6 Judge O'Connor determined Mr. James was not afflicted with mental conditions, physical disabilities, or substance impairment that would interfere with his decision-making. Judge O'Connor asked defense counsel, Steven Reich, if he had anything to add. Counsel reported Mr. James had filed a grievance with the bar association about him, which had been summarily dismissed. Nonetheless, counsel stated: "The fact that [Mr. James] has indicated he believes he can't work with me and doesn't want to[,] doesn't change my position that I believe I can work with him and I'll continue to work with him." RP (Mar. 10, 2005) at 23.
¶ 7 Judge O'Connor responded, "Well, the issue before me is not to, at least is not to replace Mr. Reich but to discharge Mr. Reich." RP (Mar. 10, 2005) at 24. Therefore, Judge O'Connor stated, the purpose of the colloquy was limited to advising him to prepare himself for trial, informing him of the seriousness of the penalty, warn him that he will be held to the same legal standards as a lawyer, and assess his competence. Judge O'Connor stressed the purpose of the motion hearing was to consider Mr. James' self-representation and not to replace counsel. Even so, Judge O'Connor announced she would order standby counsel and direct the public defender to assign new counsel.
¶ 8 On March 15, the trial court entered an order finding that Mr. James had made a knowing and voluntary waiver of his right to counsel and allowing self-representation. On May 2, another order clarified the new standby counsel's role.
¶ 9 At trial, Mr. James reaffirmed his waiver before Judge Robert Austin:
THE COURT: Mr. James, you are wishing to proceed without an attorney; is that right?
THE DEFENDANT: Yes, I am.
THE COURT: And has the colloquy taken place in the
MR. CIPOLLA: Your Honor, the colloquy, Mr. James has gone through the colloquy three times now, he's well-versed.
THE COURT: All right.

*107 Mr. James, I am not going to go through that again with you. But I will caution you with these kind of charges, this is one of the most difficult things for any lawyer to do, who's been trained and trained and trained. You do understand that?
THE DEFENDANT: Yes, I do.
THE COURT: You do understand that you are held to the same rules as if you were an attorney.
THE DEFENDANT: Yes, I do.
THE COURT: Criminal rules of proceedings. The Rules of Evidence. Do you understand that?
THE DEFENDANT: Yes, I do.
THE COURT: Okay. You still wish to proceed without a lawyer?
THE DEFENDANT: Yes, I do.
RP (May 9, 2005) at 1-2.
¶ 10 A jury found Mr. James guilty of two counts of attempted murder and one count of unlawful possession of a firearm. The court denied Mr. James' motion for a new trial based on his claimed denial of right to counsel. After sentencing, Mr. James appealed.

ANALYSIS

A. Waiver of Counsel
¶ 11 The issue is whether the trial court erred by violating Mr. James' Sixth Amendment right to counsel in allowing him to represent himself. Mr. James contends he did not knowingly, intelligently, and unequivocally waive his right to counsel.
¶ 12 A defendant has the constitutional right to represent himself at trial and at sentencing. State v. DeWeese, 117 Wash.2d 369, 377, 816 P.2d 1 (1991); State v. Buelna, 83 Wash.App. 658, 660, 922 P.2d 1371 (1996); Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Once a defendant unequivocally demands self-representation, the trial court must determine if the defendant has made a knowing, intelligent, and voluntary waiver of the right to assistance of counsel. DeWeese, 117 Wash.2d at 377, 816 P.2d 1. We review a trial court's grant of a defendant's self-representation request for an abuse of discretion. State v. Hemenway, 122 Wash.App. 787, 792, 95 P.3d 408 (2004). A trial court abuses its discretion if its "decision is manifestly unreasonable, or is exercised on untenable grounds, or for untenable reasons." State v. Vermillion, 112 Wash.App. 844, 855, 51 P.3d 188 (2002).
¶ 13 No set formula exists for deciding the validity of a waiver of counsel. DeWeese, 117 Wash.2d at 378, 816 P.2d 1. Rather, the court should inquire "`for as long and as thoroughly as the particular circumstances demand.'" State v. Chavis, 31 Wash. App. 784, 789, 644 P.2d 1202 (1982) (quoting Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948)). At a minimum, a defendant must understand the severity of the charges; the maximum possible penalties for the crime charged; and the existence of technical, procedural rules governing the presentation of a defense. City of Bellevue v. Acrey, 103 Wash.2d 203, 211, 691 P.2d 957 (1984). We review the record as a whole in determining whether a defendant knowingly and intelligently waived counsel. In re Det. of Turay, 139 Wash.2d 379, 397, 986 P.2d 790 (1999).
¶ 14 Here, the colloquy occurring on March 10, and the brief colloquy on May 9, sufficiently established that Mr. James unequivocally waived his right to counsel and did so knowingly and intelligently. Mr. James demanded self-representation in writing. Judge O'Connor's lengthy colloquy conformed to the Faretta principles. She carefully explained the severity of the charges; the maximum possible penalties for the crime charged; and the existence of technical, procedural rules governing the presentation of a defense. See Acrey, 103 Wash.2d at 211, 691 P.2d 957. When asked whether he understood, Mr. James repeatedly answered in the affirmative. He informed the court he would research the legal procedures he was unsure of at the local law library. Judge Austin confirmed Mr. James' desire to represent himself.
¶ 15 While Mr. James expressed some confusion about replacing counsel and/or discharging counsel, he unequivocally informed Judge Austin at trial he still wished to proceed pro se. Judge O'Connor additionally *108 ordered replacement counsel even though the request was made orally during the colloquy. Thus, Mr. James was granted both his self-representation request and new counsel request. Mr. Cipolla confirmed to Judge Austin that Mr. James was "well-versed" in the colloquy as Judge Austin began the colloquy anew. RP (May 9, 2005) at 1. After Judge Austin cautioned Mr. James about the risks of self-representation, Mr. James unequivocally replied he wanted to proceed without a lawyer.
¶ 16 Given the above, the court had a tenable basis to allow Mr. James to represent himself. Therefore, the court did not abuse its discretion in allowing self-representation.

B. Evidence Sufficiency
¶ 17 Evidence is sufficient to support a conviction if, when viewed in the light most favorable to the State, it permits a rational fact finder to find the essential elements of the crime beyond a reasonable doubt. State v. Tilton, 149 Wash.2d 775, 786, 72 P.3d 735 (2003). All reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant. State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992).
¶ 18 A claim of evidence insufficiency admits the truth of the State's evidence plus all inferences. Id. Credibility determinations are left for the fact finder. State v. Camarillo, 115 Wash.2d 60, 71, 794 P.2d 850 (1990). Circumstantial and direct evidence are equally reliable. State v. Delmarter, 94 Wash.2d 634, 638, 618 P.2d 99 (1980).
¶ 19 Mr. James contends the evidence merely shows he shot at someone around the same time as the crime charged, but it does not prove the charged crime. But Mr. James ignores the permissible inferences from the direct evidence.
¶ 20 Direct evidence establishes that on June 27, 2004, a white car slowly drove past two men on the sidewalk, circled the block, and then the driver shot the men from the passenger window and sped off. Mr. Payne filled in some gaps. He was shot in each thigh, the incident occurred at 2614 North Crestline, and the shooter was black. He noticed the car was white and smaller. Mr. Schelin also said the car was white. Ms. Vialpando established the time, place, and circumstances connecting Mr. James to the crime, such as the car color, two men being on the sidewalk, and Mr. James' conduct in shooting out the window at the men. Mr. James told her not to tell anyone. Mr. James' sister confirmed that Mr. James had access to the white car.
¶ 21 Mr. James argues that Ms. Vialpando did not testify that the men were shot. But the prosecutor asked her, "So, for no reason, Mr. James just pulled out a gun and shot them?" Trial RP at 64. She stated, "Yes." Trial RP at 64.
¶ 22 Viewing the evidence in the light most favorable to the State, we conclude the evidence is sufficient to support Mr. James' conviction.

C. Confrontation
¶ 23 Mr. James contends his constitutional right to confrontation was violated by the admission of police officers' testimony regarding the statements of others.
¶ 24 The Sixth Amendment confrontation clause guarantees a criminal defendant "the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. Whether a trial court has violated a defendant's right to confrontation is an issue reviewed de novo on appeal. United States v. Aguilar, 295 F.3d 1018, 1020 (9th Cir. 2002); State v. Medina, 112 Wash.App. 40, 48, 48 P.3d 1005 (2002).
¶ 25 Solely testimonial statements implicate the confrontation clause. They are admissible only if the witness testifies at trial, or is unavailable and the accused has had a prior opportunity to cross-examine the witness. See Crawford v. Washington, 541 U.S. 36, 59, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).
¶ 26 Crawford pointed out two main considerations to determine whether an out-of-court assertion is testimonial: "An accuser who makes a formal statement to government *109 officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." Crawford, 541 U.S. at 51, 124 S.Ct. 1354. The former falls within the "core class of `testimonial' statements"; the latter is not. Id. The core class of testimonial statements includes "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." State v. Shafer, 156 Wash.2d 381, 389 n. 6, 128 P.3d 87 (2006) (quoting Crawford, 541 U.S. at 51-52), 124 S.Ct. 1354.
¶ 27 In Davis v. Washington, ___ U.S. ___, 126 S.Ct. 2266, 2273-74, 165 L.Ed.2d 224 (2006), the Court set perimeters for defining testimonial statements made to law enforcement personnel:
Statements are non-testimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.
¶ 28 Here, the first objectionable statement cited by Mr. James was that one of the officers under Officer Fertakis' supervision, Officer Curtis, was informed by an unnamed witness that a black male was seen talking on a cell phone when a handgun fell out of his pants in front of an apartment complex at 2712 East South Riverton just before the shooting. Officer Fertakis was going into more detail about what the unknown male witness said when Mr. James objected and the objection was sustained.
¶ 29 The State responds that Officer Fertakis was merely recounting the course of the investigation to explain why the investigation was in the East South Riverton neighborhood. Further, because the testimony was not offered to prove the truth of the matter asserted, it is not hearsay, and so it does not implicate the confrontation clause.
¶ 30 "[E]ven testimonial statements may be admitted if offered for purposes other than to prove the truth of the matter asserted." State v. Davis, 154 Wash.2d 291, 301, 111 P.3d 844 (2005) (citing Crawford, 541 U.S. at 59 n. 9, 124 S.Ct. 1354), aff'd, ___ U.S. ___, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). Officer Fertakis was asked about his investigation, and the form of the question immediately preceding the challenge was, "Please tell us what you did next." Trial RP at 21. The inquiry did not call for hearsay.
¶ 31 Even so, evidence of a black man seen with a gun outside of Ms. Vialpando's apartment shortly before the shooting tends to tie Mr. James to the crime. The affidavit of facts attached to the amended information shows the witness who spoke with Officer Curtis wished to remain anonymous, identified Ms. Vialpando by name and apartment, and knew the black man was her boyfriend. The witness saw the man with the gun leave with Ms. Vialpando. Soon, the witness heard gunfire from across the river. The shooting scene is directly across the river from the apartment. Given that the investigation was crime related, the reporting person would reasonably believe the statement would be available for use at a later trial. Thus, the statement is testimonial.
¶ 32 Officer Fertakis testified he went to 2712 East South Riverton, Apt. 7 and spoke with Ms. Vialpando's mother who stated that her daughter was with a black male named Brian and she was not home yet. Officer Fertakis stated the mother was very concerned since it was 5:00 A.M. and she was not able to reach her daughter on her phone, which was unusual. The State argues this is nontestimonial.
¶ 33 But, the question eliciting the testimony shows otherwise, "Did you obtain any further information concerning a car, or possible suspect at that location?" Trial RP at 22. The contact was initiated by police at 5:00 A.M. in the course of a police investigation of a shooting. The primary purpose of the officers' visit was investigation of the anonymous source's information, and the answers were given in response to a police interrogation. Police were not asking questions to assess conditions at hand to meet an *110 emergency. A person giving this statement to Officer Fertakis would reasonably believe that the statement would be available for use at a later trial. The statement is testimonial.
¶ 34 Officer Fertakis related that Mr. James' sister, Virla Spencer, told him that "the vehicle used in the drive-by shooting was at Cincinnati and Francis. And it was left there unattended." Trial RP at 24-25. Because Ms. Spencer testified and was subject to cross-examination, this statement does not implicate the confrontation clause.
¶ 35 Finally, Officer Ronald Tilley testified he interviewed an unidentified female who was with the shooting victims before they left for a walk, and that she heard six or seven shots and went in response to a victim's call for help. Mr. James argues this evidence connects Ms. Vialpando's testimony concerning multiple shots with another witness who also attested to multiple shots. This testimony does not appear to be presented for the truth of the matter asserted. The confrontation clause is not implicated. And Mr. Payne testified to hearing five or six shots.
¶ 36 Nonetheless, any error is harmless. When reviewing a confrontation clause issue for the first time on appeal, we use the overwhelming untainted evidence test to determine whether error is harmless. State v. Hieb, 107 Wash.2d 97, 109-10, 727 P.2d 239 (1986). That test requires a finding of harmless error if the untainted evidence admitted is so overwhelming as to necessarily lead to a finding of guilt. Id. (citing State v. Guloy, 104 Wash.2d 412, 426, 705 P.2d 1182 (1985)).
¶ 37 A great deal of hearsay was admitted without objection in this case, as may be expected with self-representation. However, the collective testimony of Ms. Vialpando, Mr. Schelin, Mr. Payne, and Ms. Spencer was overwhelmingly sufficient to convict Mr. James. Therefore, we conclude any hearsay error was harmless.

D. Juvenile Offense Record
¶ 38 Mr. James contends the use of his juvenile offense history in the calculation of his sentence violated his right to a jury trial under Apprendi and Blakely because his juvenile adjudications were not found by jury verdict.
¶ 39 In Apprendi, the Supreme Court held, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490, 120 S.Ct. 2348. Blakely clarified that the statutory maximum "for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely, 542 U.S. at 303, 124 S.Ct. 2531.
¶ 40 After briefing, this court issued an opinion rejecting an argument similar to Mr. James'. In State v. Kuhlman, this court, like both other divisions, held that prior juvenile adjudication will be treated as part of the Apprendi/Blakely prior convictions exception. State v. Kuhlman, 135 Wash.App. 527, 533-34, 144 P.3d 1214 (2006) (citing State v. Mounts, 130 Wash.App. 219, 122 P.3d 745 (2005), review denied, 159 Wash.2d 1015, 157 P.3d 403, 2007 Wash. LEXIS 240 (April 4, 2007); State v. Weber, 127 Wash.App. 879, 889-90, 112 P.3d 1287 (2005), review granted, 156 Wash.2d 1010, 132 P.3d 147 (2006)). Juvenile offenders are guaranteed due process protections under the constitution and are afforded substantial procedural rights, giving us confidence in use of the juvenile adjudications in calculating an adult offender score. Kuhlman, 135 Wash.App. at 533-34, 144 P.3d 1214. Accordingly, the court did not err.

E. Offender Score Calculation
¶ 41 The issue is whether the trial court erred by allowing certain convictions in Mr. James' criminal history in calculating his offender score. Mr. James argues due process and the Sentencing Reform Act of 1981 (SRA) chapter 9.94A RCW, require the State prove his criminal history by a preponderance of the evidence, and the evidence is insufficient here.
¶ 42 The State has the burden of proving the defendant's criminal history by a preponderance of the evidence, or the court may *111 rely on the defendant's stipulation or acknowledgement of prior convictions to calculate the offender score. RCW 9.94A.530(2); In re Pers. Restraint of Cadwallader, 155 Wash.2d 867, 873-74, 123 P.3d 456 (2005). "If the defendant disputes material facts, the sentencing court either must not consider the facts, or it must grant an evidentiary hearing on the matter." Cadwallader, 155 Wash.2d at 874, 123 P.3d 456 (citing RCW 9.94A.530(2)).
¶ 43 "[T]he use of a prior conviction as a basis for sentencing under the SRA is constitutionally permissible if the State proves the existence of the prior conviction by a preponderance of the evidence." State v. Ford, 137 Wash.2d 472, 479-80, 973 P.2d 452 (1999). "[F]undamental principles of due process prohibit a criminal defendant from being sentenced on the basis of information which is false, lacks a minimum indicia of reliability, or is unsupported in the record." Id. at 481, 973 P.2d 452. Due process is satisfied if, "`the facts relied upon by the trial court must have some basis in the [trial] record.'" Id. at 482, 973 P.2d 452 (quoting State v. Bresolin, 13 Wash.App. 386, 396, 534 P.2d 1394 (1975)).
¶ 44 Even when a defendant disputes the calculation of his offender score, the sentencing court can consider out-of-state convictions if defense counsel affirmatively acknowledged that the State's calculation was correct. State v. Hunter, 116 Wash.App. 300, 302, 65 P.3d 371 (2003), aff'd sub nom. State v. Ross, 152 Wash.2d 220, 95 P.3d 1225 (2004).
¶ 45 Here, the defense filed a sentencing brief to which was attached an understanding of criminal history and two scoring sheets, each showing a possible calculation of the offender score. Both scenarios included the now-disputed offenses. This constituted an acknowledgement. Mr. James did not object to the offenses at sentencing. The court did not err.
¶ 46 Affirmed.
I CONCUR: KATO, J. Pro Tem.
SCHULTHEIS, A.C.J. (dissenting).
¶ 47 "A demand to defend pro se must be stated unequivocally." State v. Fritz, 21 Wash.App. 354, 360, 585 P.2d 173 (1978). Because my review of the record as a whole shows that Bryan Montez James did not unequivocally waive his right to counsel, I would reverse.
¶ 48 Unless the demand to defend pro se is stated unequivocally, the waiver of counsel is not valid. State v. DeWeese, 117 Wash.2d 369, 377, 816 P.2d 1 (1991). This is "[t]o protect defendants from making capricious waivers of counsel, and to protect trial courts from manipulative vacillations by defendants." Id. at 376, 816 P.2d 1. The waiver of counsel must also be knowingly and intelligently made. State v. Honton, 85 Wash.App. 415, 419, 932 P.2d 1276 (1997).
¶ 49 The trial court is required to indulge in every reasonable presumption against waiver of the right to counsel. State v. Silva, 108 Wash.App. 536, 539, 31 P.3d 729 (2001) (citing State v. Chavis, 31 Wash.App. 784, 787, 789, 644 P.2d 1202 (1982)); see In re Det. of Turay, 139 Wash.2d 379, 396, 986 P.2d 790 (1999) (citing Brewer v. Williams, 430 U.S. 387, 404, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977)). When operating under this strong presumption against the effective waiver of counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. City of Bellevue v. Acrey, 103 Wash.2d 203, 210, 691 P.2d 957 (1984) (quoting Von Moltke v. Gillies, 332 U.S. 708, 723-24, 68 S.Ct. 316, 92 L.Ed. 309 (1948)). This was not done here.
¶ 50 The record must show not only that the defendant was informed of the dangers and disadvantage of representation, but that the constitutional right was waived upon understanding and accepting the dangers and disadvantages of representation. If the record does not show that there was such an understanding and acceptance of the dangers and disadvantages of self-representation, it will not show that the defendant "`knows what he is doing and his choice is made with eyes open,'" the standard announced by the United States Supreme Court in Faretta v. California, 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (quoting Adams v. *112 United States ex rel. McCann, 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942)). Accord Chavis, 31 Wash.App. at 789-90, 644 P.2d 1202; Acrey, 103 Wash.2d at 211, 691 P.2d 957.
¶ 51 Mr. James was facing a low-end sentencing range of 47½ years. During the colloquy, Mr. James twice stated that he did not understand. He also told the court that instead of wishing to proceed pro se, he just wanted a different lawyer. The trial court twice informed Mr. James that because he did not present a motion, he would not be heard on the issue. The basis of the trial court's refusal to consider Mr. James' oral motion for new counsel is unclear. A motion need not be in writing if it is made during a hearing or trial. CrR 8.2; CR 7(b). The trial court here simply chose to disregard Mr. James' oral motion for new counsel. The request for new counsel should have informed the court of the equivocation of his self-representation.[1] This is particularly true because Mr. James' request was made upon being informed of the heavy responsibilities of self-representation. And Mr. James clearly stated that he did not understand. Mr. James obviously did not make a choice with eyes wide open if he requested counsel after receiving notice of the burdens of self-representation.
¶ 52 A colloquy is, by definition, a two-sided dialogue, not a one-sided lecture. For a colloquy to be meaningful, the trial judge must not only explain the responsibilities and jeopardy, but listen to the defendant's response and reply accordingly. If the defendant's response shows equivocation, the trial judge cannot ignore it. To hold otherwise would make the colloquy a worthless exercise and a wholly unacceptable means to determine the valid waiver of a constitutional right.
¶ 53 The colloquy by Judge Kathleen O'Connor was not meaningful because she chose to ignore both Mr. James' request for different counselevidently because he did not make a formal motionand his clear equivocation as to his ability to proceed pro se.
¶ 54 The later cursory colloquy by Judge Robert Austin immediately before trial did not rehabilitate the previous equivocation. The prosecutor told Judge Austin that Mr. James had engaged in a self-representation/waiver colloquy with the court on three prior occasions. But the record does not show any other colloquy and the State informed us during oral argument that we have before us all of the relevant record. I can only conclude, therefore, that Judge Austin was misinformed of the warnings afforded Mr. James. Had Judge Austin been fairly informed that Mr. James had discussed his self-representation only once with the court, rather than the three times represented by the prosecutor, and if the judge had known of the equivocal nature of Mr. James' colloquy with Judge O'Connor, I would expect that Judge Austin's colloquy with Mr. James would have been significantly more thorough.
¶ 55 Moreover, Judge O'Connor did not once explicitly advise Mr. James that he had the right to counsel or ask whether Mr. James wished to waive that right. Nor did Judge O'Connor discourage Mr. James from self-representation. See State v. Christensen, 40 Wash.App. 290, 295 n. 2, 698 P.2d 1069 (1985) (setting forth the colloquy used by the federal bench for waiver of counsel including discouragement from self-representation as a guideline for our trial courts[2]). The motion to proceed pro se was not even *113 made by Mr. James. Instead, the motion and affidavit were signed by his then-attorney. Still, even if a written waiver of counsel were signed by Mr. James, and there was not a written waiver here, it would be insufficient to waive the right to counsel. See Acrey, 103 Wash.2d at 210, 691 P.2d 957.
¶ 56 The appointment of standby counsel is not a substitute for establishing that the defendant unequivocally waived counsel and that the waiver was knowing and intelligent. State v. Buelna, 83 Wash.App. 658, 661-62, 922 P.2d 1371 (1996). Mr. James did not relinquish representation to standby counsel. Cf. State v. Bebb, 108 Wash.2d 515, 526, 740 P.2d 829 (1987). Standby counsel's participation at trial was minimal and the record shows that standby counsel had only a little over one month to prepare and was able to interview only 3 of the 17 witnesses. Judging from the very limited examination of witnesses, the nature of the examination, the absence of objection to hearsay evidence, and the general tenor of the closing argument, there was very little input from standby counsel.
¶ 57 Finally, this error was not harmless. A constitutional violation of the right to counsel is so fundamental to the right to a fair trial that any deprivation of it is not subject to a harmless error analysis. Silva, 108 Wash.App. at 542, 31 P.3d 729 (quoting Frazer v. United States, 18 F.3d 778, 782 (9th Cir.1994)); State v. Robinson, 79 Wash.App. 386, 393-94, 902 P.2d 652 (1995)(citing Chapman v. California, 386 U.S. 18, 23 & n. 8, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (citing Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963))). Cf. State v. Robinson, 153 Wash.2d 689, 697, 107 P.3d 90 (2005) (setting forth harmless error test based on violation of right to counsel in court rule).
¶ 58 Because Mr. James did not make an unequivocal, knowing, and intelligent waiver of counsel, I would hold that Mr. James was denied his right to counsel at trial. I would therefore reverse his conviction and remand for further proceedings.
NOTES
[1] Whether Mr. James' request for new counsel had merit is not the issue. An indigent defendant is not entitled to counsel of his choice. State v. Stenson, 132 Wash.2d 668, 733, 940 P.2d 1239 (1997) (citing DeWeese, 117 Wash.2d at 375-76, 816 P.2d 1). The trial court's summary dismissal of his request is evidence of Mr. James' equivocation.
[2] The colloquy includes these admonishments:

"`[14.] . . . I must advise you that in my opinion you would be far better defended by a trained lawyer than you can be by yourself. I think it is unwise of you to try to represent yourself. You are not familiar with the law. You are not familiar with court procedure. You are not familiar with the rules of evidence. I would strongly urge you not to try to represent yourself. [This could be expanded and repeated.]
"`[15.] Now, in light of the penalty that you might suffer if you are found guilty and in light of all of the difficulties of representing yourself, is it still your desire to represent yourself and to give up your right to be represented by a lawyer?'" Christensen, 40 Wash.App. at 296 n. 2, 698 P.2d 1069 (alterations in original).