FILED
COURT OF APPEALS
DIVISION II

2014 DEC 30 AM 9: 49

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44533-6-II |
| Respondent, | |
| v. | |
| JIMMY JOSEPH PERKINS, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — A jury found Jimmy Perkins guilty of second degree assault. Perkins appeals his conviction and sentence, arguing that (1) the prosecutor committed misconduct during closing arguments, and (2) the court miscalculated his offender score by adding 1 point for being on community custody. Because the prosecutor did not commit misconduct and the trial court properly calculated Perkins' offender score, we affirm.

## FACTS

Jimmy Perkins and John Mayfield were cellmates in the Cowlitz County Jail. Perkins was in custody for a probation violation, and Mayfield was in custody for an alleged assault. Mayfield and Perkins had confrontations over various issues. In the common area of the cell unit, Mayfield questioned Perkins about Mayfield's missing candy and asked Perkins to leave his belongings

alone. Perkins asked if Mayfield was insinuating that he was a "punk b*tch," to which Mayfield responded that Perkins was a "punk b*tch." 1 Verbatim Report of Proceedings (VRP) at 96. Perkins approached Mayfield and punched him in the face. In response, Mayfield held Perkins in a headlock until an inmate trustee broke up the fight.

After that fight, Mayfield walked around the cell unit common area insulting Perkins and saying, "[W]e [can] take care of it . . . when we get locked in." 1 VRP at 129. Perkins motioned for Mayfield to come into their cell to fight again, but Mayfield continued to walk around the common area. Perkins then crossed the common area and hit Mayfield. They fought until correctional officers intervened. Mayfield was examined by a doctor, who determined that he had a broken cheekbone and that he needed surgery.

The State charged Perkins with second degree assault for the second fight. The trial court admitted a surveillance video of the cell unit showing the fight between Perkins and Mayfield that resulted in the charge.

Perkins claimed self-defense and testified at trial that after the first fight, Mayfield threatened to rape him when they were locked in their cell. Perkins also testified that "you can't let somebody continue to talk like that without responding, saying something to him," and there's "the code of the jail," that if an inmate allows someone to insult him without fighting or standing up for himself, that insult becomes true. 2 VRP at 240; 3 VRP at 294. Perkins then testified that he went into his cell to wait for Mayfield to fight.

On cross-examination, Perkins testified that Mayfield wanted to fight and that Mayfield knew Perkins was coming after him. Specifically, in response to the State's question as to whether he wove through the seating area in the cell unit to sneak over to hit Mayfield,

A. There's no sneaking.
Q. Okay, so you were directly going after him?
A. Well, he knew what I was doing the whole time.
Q. He knew that you were going to come at him and beat him?
A. The whole time he wanted to fight.

2 VRP at 250. Perkins further testified on cross-examination that Mayfield only hit him after Perkins went after him.

During the State's cross-examination, Perkins interrupted the prosecutor, stating that Mayfield was standing outside the courtroom window trying to intimidate him. The prosecutor said that he did not see Mayfield. The trial court directed Perkins to answer the pending question, stating that the trial court would control the hallway. The prosecutor continued questioning Perkins and defense counsel interrupted, asking the trial court if Mayfield was outside the courtroom. Again, Perkins said that Mayfield was staring at him, and again, the prosecutor said he did not see him. The trial court directed Perkins to answer the question and stated that it had control of the courtroom.

In closing arguments, the prosecutor argued that Perkins did not have the right to hit Mayfield based on Mayfield's insults. The prosecutor referenced Perkins' testimony about "the code of the jail." 3 VRP at 294. The prosecutor argued that the "code of the jail" did not make Perkins' use of force reasonable or deprive Perkins of his free choice to exercise other options and not fight Mayfield. 3 VRP at 294. The prosecutor argued that if Perkins was concerned for his safety, "he had a number of options aside from [fighting]. He could have gone to, you know, exclusive custody. . . The Defendant did not have a right to defend himself because the Defendant created both of those situations." 3 VRP at 294, 306. The prosecutor also suggested that Perkins

3

was trying to distract the jury when he complained that Mayfield was outside the courtroom because Perkins had just gotten caught giving contradictory testimony.

During rebuttal argument, the prosecutor reminded the jury that they are expected to read the jury instructions. The prosecutor then rebutted Perkins' assertion that being insulted was a good enough reason to fight by arguing that Perkins did not have reasonable grounds for believing that he was about to be attacked and that the expectation of a future fight does not create the right to use force.

The prosecutor also argued that he felt threatened when he was examining Perkins and that Perkins demonstrated aggressive tendencies on the stand. Perkins objected and moved for a mistrial. The trial court denied the mistrial and instructed the jury to disregard the prosecutor's comments about his personal feelings.

The prosecutor's rebuttal argument continued without additional objections. He argued that Perkins "was and is the aggressor" and that the jury saw "how quickly he was to rise to anger, and that is suggestive of someone who's going to attack someone." 3 VRP at 346. The prosecutor also suggested that Perkins and defense counsel used "diverting tactics" when Perkins could not change his story or talk his way out of the situation. 3 VRP at 346. "That's what his Defense Counsel did here earlier. And that's what they get paid to do. Come here and divert your attention from what really happened." 3 VRP at 346.

The jury found Perkins guilty of second degree assault. Perkins stipulated to his criminal history, stating that "he wants to be sentenced today and get it over with." 3 VRP at 368. During sentencing, Perkins did not object to the prosecutor's references to the applicable sentencing range or Perkins' calculated offender score. The felony judgment and sentence showed that Perkins was

4

on community custody when the assault took place, and that 1 point was added to his offender score as a result. The trial court sentenced Perkins to a mid-range sentence. Perkins appeals.

## ANALYSIS

### A.    PROSECUTORIAL MISCONDUCT

Perkins alleges that the prosecutor committed misconduct by (1) commenting on his personal feelings about Perkins' demeanor while testifying, (2) arguing Perkins' propensity for aggression, (3) misstating the law of self-defense and lowering the State's burden of proof, (4) offering his personal opinion on Perkins' credibility and introducing facts not in evidence, and (5) disparaging the role of defense counsel. Perkins also alleges that the cumulative effect of the prosecutor's misconduct requires reversal. Perkins' claims of prosecutorial misconduct fail.

To prevail on a claim of prosecutorial misconduct, Perkins must show that the prosecutor's conduct was both improper and prejudicial. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012) (citing *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011)). Once a defendant has demonstrated that the prosecutor's conduct was improper, we evaluate the defendant's claim of prejudice under two different standards of review, depending on whether the defendant objected to the misconduct at trial. *Emery*, 174 Wn. App. at 760-61. If the defendant objected, he must show that the prosecutor's misconduct resulted in prejudice that had a substantial likelihood of affecting the jury's verdict. *Emery*, 174 Wn.2d at 760-61 (citing *State v. Anderson*, 153 Wn. App. 417, 427, 220 P.3d 1273, *review denied*, 170 Wn.2d 1002 (2009)).

If the defendant did not object at trial, the defendant is deemed to have waived any error, unless the prosecutor's misconduct was so flagrant and ill intentioned. *Emery*, 174 Wn.2d at 760-61 (citing *State v. Stenson*, 132 Wn.2d 668, 727, 940 P.2d 1239 (1997), *cert. denied*, 523 U. S.

1008 (1998)). The defendant is presumed to have waived any error by not objecting because objections are required to prevent additional improper remarks and abuse of the appellate process. *Emery*, 174 Wn.2d at 762. Therefore, when there is no objection, we apply a heightened standard requiring the defendant to show that "(1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" *Emery*, 174 Wn.2d at 761 (quoting *Thorgerson*, 172 Wn.2d at 455). When reviewing a prosecutor's misconduct that was not objected to, we focus "less on whether the prosecutor's misconduct was flagrant and ill intentioned and more on whether the resulting prejudice could have been cured." *Emery*, 174 Wn.2d at 762.

In closing argument, prosecutors are afforded wide latitude to draw and express reasonable inferences from the evidence. *State v. Reed*, 168 Wn. App. 553, 577, 278 P.3d 203, *review denied*, 176 Wn.2d 1009 (2012). When analyzing prejudice, we do not look at the comment in isolation, but in the context of the total argument, the issues in the case, the evidence, and the instructions given to the jury. *State v. Yates*, 161 Wn.2d 714, 774, 168 P.3d 359 (2007), *cert. denied*, 554 U.S. 922 (2008). We also presume that the jury follows the court's instructions. *Anderson*, 153 Wn. App. at 428.

1.    Arguments based on the prosecutor's personal feelings

During closing arguments, the prosecutor stated:

*And if you want to talk about is [sic] being threatened, you saw how the Defendant acted when I pushed his buttons. I thought I was being threatened. I thought I was going to be attacked, and did I? Did I jump over that box and punch him? I didn't. I was a little concerned. But I didn't punch him. Twenty minutes he waited as John Mayfield walked around . . .*

6

3 VRP at 339-40 (emphasis added) (noting the portion Perkins assigned error to).   Perkins objected.  Outside the presence of the jury, Perkins moved for a mistrial.  The trial court denied the motion.[1]  The trial court instead instructed the jury as follows:

> I just need to remind you of—of one thing: That the lawyers' remarks, statements, and arguments are intended to help you understand the evidence and apply the law. It's important, however, for you [to] remember that the lawyers' statements are not evidence.  You must disregard any remark, statement, or argument that is—that is not supported by the evidence or the law in my instruction—instructions.  The evidence is the testimony and the exhibits.  The Prosecutor made an argument regarding Mr. Perkins' demeanor on the stand yesterday and his feelings about that. You are instructed to disregard that.

3 VRP at 345-46.

Perkins asserts that this jury instruction was insufficient to cure the prejudicial effect of the prosecutor's statements and that the prosecutor's statements could not be remedied by a curative instruction, because they were flagrant, ill intentioned, and prejudicial.  Perkins also alleges that the trial court should have instructed the jury not to consider the propensity evidence.

Perkins has failed to show that the curative instruction was insufficient to cure the prejudicial effect.  The jury instruction specifically targeted the wrongful conduct by instructing the jury to disregard the prosecutor's statements regarding his personal feelings about Perkins' demeanor on the stand.  Additionally, the State presented multiple witnesses who testified that Perkins was the aggressor in the fight, and showed a video of the fight.  Perkins testified that he went after Mayfield and hit him first.  In the context of the entire argument, all of the evidence,

---

[1] Perkins does not appeal the trial court's denial of his motion for mistrial; he only appeals the prosecutor's improper statements.  His motion for mistrial preserved the issues for appeal. *State v. Lindsay*, 180 Wn.2d 423, 430-31, 326 P.3d 125 (2014) (finding that that a motion for mistrial during the prosecutor's closing arguments preserved the challenge for prosecutorial misconduct).

and the jury instruction, Perkins has not shown a substantial likelihood that any resulting prejudice from the prosecutor's statements affected the jury's verdict. Perkins' claim of prosecutorial misconduct based on the prosecutor's statements regarding his personal feelings fails.

2.    Arguments based on propensity

Perkins argues that the following statements were improper because the prosecutor commented on Perkins' propensity for aggression.

> *The point of everything is that the Defendant is the aggressor. He was and is the aggressor. You did see his temper. You did see how quickly he was to rise to anger, and that is suggestive of someone who's going to go attack someone. It is very suggestive of someone who is going to attack someone.* When he's caught in certain areas where he's unable to change his story or talk his way out of it, the Defendant was—quickly resorted to flashing anger, quickly.

3 VRP at 346 (emphasis added) (noting the portion Perkins assigned error to). Perkins did not object; accordingly, he has waived any error unless he can show that the "misconduct was so flagrant and ill intentioned that an instruction would not have cured the prejudice." *Emery*, 174 Wn.2d at 761 (citing *Stenson*, 132 Wn.2d at 727).

Perkins' claim fails because even assuming, without deciding, that the prosecutor's statements were improper, Perkins has failed to show that any resulting prejudice could not have been cured by an instruction. The State presented strong evidence of Perkins' guilt. The State presented multiple witnesses who testified that Perkins was the aggressor in the fight and the jury viewed a video of the fight. Perkins himself testified that he hit Mayfield first. Thus, in the context of the entire argument and the evidence, Perkins has not shown that the misconduct was so flagrant and ill intentioned that it could not have been cured by a jury instruction or that the resulting prejudice had a substantial likelihood of affecting the jury's verdict. Therefore, we deem Perkins'

claim of prosecutorial misconduct based on the prosecutor's statements regarding propensity waived.

3.  Prosecutor's statements relating to the law of self-defense

Perkins argues that the prosecutor committed misconduct by misstating the law of self-defense and lowering the State's burden of proof. Perkins claims that the prosecutor did this by improperly arguing that Perkins' use of force was not lawful because Perkins did not retreat or ask for protection, that force is unlawful in response to threatening words, and that Perkins could not lawfully use force to defend himself until he was being physically attacked.

> During closing, the prosecutor argued:
>
> He was there only for a three-day stint in DOC. He knew he was going. There's no reason for him to really be concerned about an ongoing, prolonged issue about being a "bitch" or a "punk." *And if there was such a concern, he had a number of options aside from that. He could have gone to, you know, exclusive custody. He could have gone, pushed one of any of these buttons here, and asked, say, "You know what, I feel like I'm being threatened." "I've got just a little bit of time left to serve out on my DOC hold, and I can go." "Can you guys help me?" "Can you get me into protective custody?"* He didn't do that. Instead, when John Mayfield was going to throw away his water bottles, the Defendant went and hit him.

3 VRP at 294-95 (emphasis added) (noting the portion Perkins assigned error to).

> He's there until the next morning. *He had other options, and he chose to show that he wasn't a punk bitch. All these red "X's" are other options, and not once did he take those other options. Instead, he created an option.* Not something that was present tense. He was dealing with something way down in the future—if it ever occurred.

3 VRP at 339-40 (emphasis added) (noting the portion Perkins assigned error to).

> Sure, they were saying things. Sure, Mr. Mayfield probably had some colorful language, but does that really give the Defendant the right to go and beat up Mr. Mayfield? The answer is "no." It doesn't give him the right to do that. The only thing that Mr. Mayfield was doing was insulting him. Now *there's an old saying, "Sticks and stones may break my bones, but words may never hurt me." And you*

9

*heard something about the code of the jail and how, you know, you call someone a —a "bitch" or a "punk," you've just made them into a "bitch" or a " punk" unless they stand up for themselves. That's a choice. That's a choice that someone makes to either abide by that code or not abide by that code.* And the Defendant made a choice to abide by that code.

3 VRP at 293-94 (emphasis added) (noting the portion Perkins assigned error to).

Now his being attacked—that is a really, really important distinction here yet, again, and this whole idea of what's self-defense is about. *That the Defendant had to have reasonable grounds for believing that he is being attacked and to stand his ground. Is being attacked. That's present tense. Right then, right there, he gets to defend himself. Not something in the future, not something an hour-and-a-half later, then, right then, right now, present tense—is being. That's what has to be going through his brain. Is being attacked. That's what justifies his right to go and beat up John Mayfield.* You saw the [. . .] video. Was he being attacked? No. What he did was—he kicked off his slippers, went around these tables, and went at John Mayfield who was not expecting him.

3 VRP at 338 (emphasis added) (noting the portion Perkins assigned error to). Perkins did not object to these statements at trial.

Viewing the prosecutor's statement in the context of the total argument, the prosecutor did not misstate the law. Rather, the prosecutor argued that the facts do not support Perkins' claim of self-defense. "A prosecutor can certainly argue that the evidence does not support the defense theory." *State v. Lindsay*, 180 Wn.2d 423, 431-32, 326 P.3d 125, 130 (2014) (citing *State v. Russell*, 125 Wn.2d 24, 87, 882 P.2d 747 (1994), *cert. denied*, 514 U.S. 1129 (1995)). The prosecutor does not commit misconduct by arguing reasonable inferences from the facts in evidence. *State v. Smith*, 104 Wn.2d 497, 510-11, 707 P.2d 1306 (1985)).

The prosecutor's statements mirror the language of the jury instruction[2] and do not misstate the law.[3] The prosecutor argued that, based on the circumstances, Perkins' use of force was not reasonable. The prosecutor's statements do not misstate the law of self-defense, lower the State's burden of proof, or contradict the jury instructions. The prosecutor's statements were not improper.

Even if the prosecutor's statements were improper, Perkins has not shown that the misconduct was so flagrant and ill intentioned that it could not have been cured by an instruction. Moreover, as stated above, the State presented strong evidence against Perkins. In the context of the entire argument and the evidence, Perkins has not shown a substantial likelihood that any resulting prejudice affected the jury's verdict, and therefore, his claim of prosecutorial misconduct fails.

4.      Arguing facts not in evidence and offering a personal opinion on Perkins' credibility

Perkins alleges that the prosecutor argued "facts" not in evidence and provided a personal opinion of Perkins' credibility by suggesting that Perkins fabricated a diversion. Br. of Appellant at 18.

> When I had him pinpoint it on that, and he couldn't get out of that statement, as a person who knew he was caught in that statement, he wanted to divert your attention. *He wanted you all to think, "Oh, my goodness." He was really being intimidated by John Mayfield. So what does the Defendant do? "Tell your client, tell your victim to quit intimidating me." And what did you guys all do? You all*

---

[2] "Number 14A. It is lawful for a person who is in a place where that person has a right to be and who has reasonable grounds for believing that he is being attacked to stand his ground and defend against such attack by the use of lawful force. The law does not impose a duty to retreat." 3 VRP at 288.

[3] Perkins does not challenge the self-defense instructions given to the jury.

*turned and looked at doors. You looked out there, and you forget for a brief moment what he was saying.* "John was in this corner intimidating me." And then, "I knew it was on, so I kicked off my slippers." Defendant's right there—there's his slippers. Where's John? Right there walking past Table 3—right there. Is he even looking at the Defendant? Is he saying, "Let's go. Let's fight. "Naw, he's not. John's looking at the ground, looking away. And look at the Defendant; he just goes over to him. Let's watch that.

3 VRP at 302-03 (emphasis added) (noting the portion Perkins assigned error to). Perkins did not object to the statements at trial.

Perkins has not shown that the prosecutor argued facts outside of the record. Prosecutors are afforded wide latitude to draw and express reasonable inferences from the evidence. *Reed*, 168 Wn. App. at 577. The prosecutor argued that Perkins wanted the jury to think that he was intimidated by Mayfield. This argument is a reasonable inference from the facts on the record,[4] and from Perkins' theory of self-defense. Further, the prosecutor's statement that the jury "turned and looked at the doors" is a recitation of what happened in the courtroom, not an argument of facts not in evidence. 3 VRP at 302.

Perkins also has not shown that the prosecutor offered his own opinion about Perkins' credibility. Perkins properly notes that there is no evidence to suggest that Mayfield was not outside the courtroom. However, the prosecutor did not say that he believed Perkins was lying or that there was evidence that Perkins was lying. He recounted Perkins' testimony, which was on the record, and suggested that Perkins interrupted him to divert the jury's attention from the

---

[4] The prosecutor referenced Perkins' interruption during the State's cross-examination, when Perkins said, "[w]hy is your witness trying to intimidate me, Your Honor, now by standing outside that window and staring at me." 2 VRP at 253.

question, which is a reasonable inference from the facts on the record. The prosecutor did not offer a personal opinion and the statements were not improper.

Even if the statements were improper, Perkins has not shown that the misconduct was so flagrant and ill intentioned that it could not have been cured by an instruction. Moreover, the State played a video of the fight, and presented multiple witnesses testifying that Perkins was the aggressor in the fight. Perkins testified that he went after Mayfield and hit him first. In the context of the entire argument and the evidence, Perkins has not shown a substantial likelihood that any resulting prejudice affected the jury's verdict. Therefore, Perkins' challenge fails.

5. Comments disparaging defense counsel

Perkins alleges that the prosecutor's comments about Perkins and defense counsel were disparaging and flagrant, ill intentioned, and prejudicial. Perkins assigns error to the following statements made by the prosecutor during closing arguments:

> When he's caught in certain areas where he's unable to change his story or talk his way out of it, the Defendant was—quickly resorted to flashing anger, quickly. And if that didn't work for him, *then he used diverting tactics. That's what his Defense Counsel did here earlier. And that's what they get paid to do. Come here and divert your attention from what really happened.* What really happened is the Defendant assaulted John Mayfield twice. He did it without lawful authority.

3 VRP at 346 (emphasis added) (noting the portion Perkins assigned error to.) Perkins did not object to the above statement, and the State concedes that the above statement was improper, but argues that it was not prejudicial.

A prosecutor may not "disparagingly comment on defense counsel's role or impugn the defense lawyer's integrity." *Thorgerson*, 172 Wn.2d at 451 (citing *State v. Warren*, 265 Wn.2d 17, 29-30, 195 P.3d 940 (2008)). Here, it is clear that the prosecutor made a statement saying that

13

the defense counsel is paid to divert attention, and that is improper. We accept the State's concession that the prosecutor's statement was improper.

But, Perkins has not shown that the misconduct was so flagrant and ill intentioned that it could not have been cured by a jury instruction. Moreover, as previously discussed, given the context of the entire argument and the evidence, Perkins has not shown a substantial likelihood that any resulting prejudice affected the jury's verdict.

6.    Cumulative effect

Perkins argues that the alleged improper statements, "whether considered individually or in the aggregate, require reversal." Br. of Appellant at 20. "'[T]he cumulative effect of repetitive prejudicial prosecutorial misconduct may be so flagrant that no instruction or series of instructions can erase their combined prejudicial effect.'" *Lindsay*, 180 Wn.2d at 443 (quoting *In re Glasmann*, 175 Wn.2d 696, 707, 286 P.3d 673 (2012)); *State v. Walker*, 164 Wn. App. 724, 738, 265 P.3d 191 (2011) (Cumulative error applies when the prosecutor makes "improper comments not just once or twice, but frequently.").

Here, the prosecutor committed misconduct when he disparaged the role of defense counsel, saying that it is paid to divert the jury's attention. Courts apply the cumulative error doctrine to cases of repetitive or frequent misconduct—one instance is neither repetitive nor frequent. Accordingly, the cumulative error doctrine does not apply here.

B. OFFENDER SCORE CALCULATION

Perkins alleges that the trial court erred by miscalculating his offender score by adding 1 point because he was under community custody at the time of the assault. Interpretation of the

Sentencing Reform Act (SRA) is a question of law, which we review de novo. *State v. Jones,* 172 Wn.2d 236, 242, 257 P.3d 616 (2011).

The SRA provides that 1 point is added if the present conviction is for an offense committed while the offender was under community custody. RCW 9.94A.525(19). Community custody is tolled if a defendant is in confinement, "unless the offender is detained pursuant to RCW 9.94A.740 or 9.94A.631 . . . for confinement pursuant to sanctions imposed for violation of sentence conditions, in which case, the period of community custody shall not toll." RCW 9.94A.171(3)(a).

The State argues that Perkins cannot challenge his offender score on appeal because he stipulated to his criminal history. Washington courts "hold that in general a defendant cannot waive a challenge to a miscalculated offender score" when based on legal error. *In re Pers. Restraint of Goodwin,* 146 Wn.2d 861, 874, 50 P.3d 618 (2002). "[T]he court may rely on the defendant's stipulation or acknowledgement of prior convictions to calculate the offender score." *State v. James,* 138 Wn. App. 628, 643, 158 P.3d 102 (2007), *review denied,* 163 Wn.2d 1013 (2008). When a defendant stipulates to his prior convictions to calculate his offender score, he cannot object to the calculation on appeal. *State v. Cadwallader,* 155 Wn.2d 867, 875, 123 P.3d 456 (2005).

Here, Perkins agreed to his criminal history, and he expressed to the court that he wanted to get sentencing over with and did not want to contest his criminal history. The criminal history that Perkins stipulated to listed his prior convictions and showed that he was on community custody at the time of the offense. Taking the record as a whole, because Perkins affirmatively

15

No. 44533-6-II

agreed to his criminal history and the fact that he was on community custody at the time of his offense, he cannot challenge it on appeal.

We affirm Perkins' conviction and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record pursuant to RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Worswick, P.J.

Maxa, J.

16