**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44589-1-II |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| JOEL KISSLER, | |
| Appellant. | |

BJORGEN, A.C.J. — A jury returned verdicts finding Joel Kissler guilty of unlawful possession of a controlled substance (heroin) with intent to deliver, unlawful possession of a controlled substance (alprazolam (Xanax)), and second degree unlawful possession of a firearm.[1] Kissler appeals his convictions and sentence, asserting that the trial court (1) violated his CrR 3.3 timely trial right by granting the State's continuance motions over his objections, (2) violated his right to counsel by allowing him to proceed pro se without adequately informing him of the potential penalties he faced if convicted, (3) improperly imposed firearm sentencing enhancements, and (4) improperly imposed a variable term of community custody. Additionally, in his statement of additional grounds for review, Kissler repeats his counsel's assertion that the trial court violated his CrR 3.3 timely trial right. Kissler also asserts in his statement that the trial court (1) violated his right to counsel and his due process rights by allowing the trial to continue while his standby counsel was absent and (2) erred by failing to suppress evidence and witness testimony based on the State's late discovery.

---

[1] The jury also returned verdicts finding Kissler not guilty of second degree assault and felony harassment.

We conclude that because the trial court properly granted the continuances, it did not violate Kissler's right to a timely trial under CrR 3.3. We also conclude that the trial court did not violate Kissler's right to counsel, that it properly imposed the firearm sentencing enhancements, and that Kissler's challenges in his statement of additional grounds lack merit. We note also, though, that a variable term of community custody no longer is permitted under the case law. Therefore, we affirm Kissler's convictions and the imposition of his firearm sentencing enhancements, but remand for correction of his community custody term.

## FACTS

On August 21, 2012, Tacoma police officers responded to a report of a domestic violence incident involving a weapon at Kissler's apartment. Officer Eric Robison located the alleged victim and interviewed her at a location near the apartment complex. Officer Sargent Kieszling observed Kissler exit the back door of his apartment wearing a holster and saw him place a pistol into a bucket before returning to his apartment. A short time later, after officers requested Kissler to come outside, Kieszling saw Kissler exit his back door a second time and watched him manipulate objects in the bucket before returning inside. Shortly thereafter, Kissler exited the front of his apartment and was arrested without incident.

During a search incident to Kissler's arrest, Officer Matthew Graham found a bag of the prescription medication, alprazolam (Xanax), in Kissler's pocket. Kissler admitted that he did not have a prescription for the pills.

Police obtained a search warrant and searched Kissler's home. Inside Kissler's home, police found a large amount of syringes, several small baggies, and a digital scale. Inside the bucket in Kissler's backyard, police found a 9mm handgun, a methamphetamine pipe, and two bags of heroin. On August 22, the State charged Kissler with second degree assault, felony

2

harassment, unlawful possession of a controlled substance (heroin) with intent to deliver, second degree unlawful possession of a firearm, and unlawful possession of a controlled substance (alprazolam (Xanax)). Kissler was arraigned on August 22 and remained in custody while awaiting a trial date of October 17.

On September 11, the trial court held a hearing at which Kissler requested to represent himself and to have standby counsel appointed. At the hearing, Kissler stated that he did not have any issues with his then assigned counsel, but that he wished to exercise his right to self-representation. Kissler also stated that he had successfully represented himself in a previous criminal trial. The trial court engaged in a lengthy colloquy with Kissler before accepting his waiver of counsel and appointing standby counsel.

On October 4, the State moved to continue the start of trial because the newly assigned prosecutor was unavailable on October 17 due to a previously scheduled vacation out of state. The State also informed the trial court that the prosecutor had been assigned to a different trial set to begin on October 18 and was expected to take four weeks to complete. The trial court granted the State's continuance motion over Kissler's objection, setting a new trial date of December 4.

On November 27, the State requested a second continuance, again asserting that the prosecutor was in trial on a different matter that would last "well into December," and that Kissler's standby counsel was on vacation from December 17 through December 24. Report of Proceedings (RP) (Nov. 27, 2012) at 1. Kissler again objected to a continuance, arguing that the State should have assigned a different prosecutor when it knew that the assigned prosecutor would be unavailable for trial. The trial court granted the State's continuance motion over

3

Kissler's objection based on the prosecutor's and standby counsel's unavailability, setting a new trial date of January 7, 2013.

On December 27, the State filed an amended information that added allegations of firearm sentencing enhancements to Kissler's charges of felony harassment, unlawful possession of a controlled substance with intent to deliver, and unlawful possession of a controlled substance. The trial court re-arraigned Kissler and read the State's amended charges to him. That same day, the State requested a third continuance. The trial court granted the State's motion over Kissler's objection, setting a new trial date of January 31, 2013. The trial court stated its reasons for granting the continuance as, "[o]perability testing on firearm needs to be completed. Assigned [prosecutor] has preassigned Murder 2[] case starting 1/14/13." Clerk's Papers (CP) at 263. On January 17, Kissler moved to dismiss his charges based on a violation of his timely trial right under CrR 3.3, which the trial court denied.

On January 31, the State requested a fourth continuance due to a lack of available courtrooms that day. The trial court granted the motion, setting a new trial date of February 4. On February 4 the State informed the trial court that Kissler's standby counsel would be unavailable to assist Kissler at the scheduled start of his trial. Kissler stated that he wanted to proceed to trial without the assistance of standby counsel. The trial court engaged in a colloquy with Kissler during which Kissler detailed his prior experience representing himself in a jury trial on criminal charges. The trial court entered an order allowing Kissler to proceed to trial without the benefit of standby counsel. The trial court also continued the start of trial for one additional day because the assigned judge was ill. At the start of trial, Kissler renewed his motion for dismissal based on a violation of CrR 3.3's timely trial rule, which the trial court again denied.

Trial began on February 5, 2013. The trial court's special verdict jury instruction stated:

4

> For purposes of a special verdict, the State must prove beyond a reasonable doubt that the defendant was armed with a deadly weapon at the time of the commission of the crime.
>
> A person is armed with a deadly weapon if at the time of the commission of the crime the weapon is easily accessible and readily available for offensive or defensive purposes. The State must prove beyond a reasonable doubt that there was a connection between the weapon and the defendant. The State must also prove beyond a reasonable doubt that there was a connection between the weapon and the crime. In determining whether these connections existed, you should consider among other factors the nature of the crime and the circumstances surrounding the commission of the crime.
>
> A pistol, revolver, or any other firearm is a deadly weapon whether loaded or unloaded.

CP at 193. The jury returned verdicts finding Kissler not guilty of second degree assault and felony harassment, and finding Kissler guilty of unlawful possession of a controlled substance (heroin) with intent to deliver, second degree unlawful possession of a firearm, and unlawful possession of a controlled substance (alprazolam (Xanax)). The jury also returned special verdicts finding that Kissler was "armed with a firearm at the time of the commission" of his unlawful possession of controlled substances crimes. CP at 151-52.

The trial court sentenced Kissler to 66 months of incarceration for unlawful possession with intent to deliver, 6 months of incarceration for second degree unlawful possession of a firearm, and 6 months of incarceration for unlawful possession of a controlled substance, to be served concurrently. The trial court also imposed 36 months of incarceration for the firearm enhancement on Kissler's unlawful possession with intent to deliver conviction, and 18 months of incarceration for the firearm enhancement on his unlawful possession of a controlled substance conviction, to be served consecutively to each other and consecutively to his base sentence, for a total of 120 months of incarceration. Finally, the trial court imposed a variable 12-month community custody term with the notation that "total [in custody] and community

custody not to exceed stat[utory] maximum." CP at 217. Kissler timely appeals his convictions and sentence.

## ANALYSIS

### I. CrR 3.3

Kissler first asserts that the trial court violated his CrR 3.3 timely trial right by granting the State's continuance motions over his objections. We disagree.

CrR 3.3(b)(1)(i) provides that an individual held in custody pending trial must be tried within 60 days of arraignment. However, certain time periods may be excluded from the computation of time awaiting trial, including continuances granted by the trial court. CrR 3.3(e)(3). CrR 3.3(f)(2) provides a basis by which a trial court may validly continue the start of trial, stating:

> On motion of the court or a party, the court may continue the trial date to a specified date when such continuance is required in the administration of justice and the defendant will not be prejudiced in the presentation of his or her defense. . . . The court must state on the record or in writing the reasons for the continuance. The bringing of such motion by or on behalf of any party waives that party's objection to the requested delay.

We will not disturb a trial court's grant or denial of a continuance motion absent a showing of manifest abuse of discretion. *State v. Cannon*, 130 Wn.2d 313, 326, 922 P.2d 1293 (1996). A trial court abuses its discretion only where it bases its decision on untenable grounds or for untenable reasons. *State v. Williams*, 104 Wn. App. 516, 521, 17 P.3d 648 (2001).

A trial court may properly grant a continuance under CrR 3.3(f)(2) based on a prosecutor's previously scheduled vacation. *State v. Torres*, 111 Wn. App. 323, 331, 44 P.3d 903 (2002). As explained in *State v. Kelly*, 64 Wn. App. 755, 767, 828 P.2d 1106 (1992),

> [f]airness in administration and effective justice requires that responsibly scheduled vacations of deputy prosecutors be honored by the State. To construe CrR 3.3 otherwise would be to deprive deputy prosecutors of the dignity they deserve, and

6

would result eventually, in less effective justice as well as in unfairness in the administration of justice.

It is also well established that a trial court does not abuse its discretion by granting a State's continuance motion based on a prosecutor's scheduling conflict from a different trial assignment. *See, e.g., State v. Flinn*, 154 Wn.2d 193, 200, 110 P.3d 748 (2005) ("Scheduling conflicts may be considered in granting continuances."); *State v. Carson*, 128 Wn.2d 805, 814, 912 P.2d 1016 (1996) ("Our courts of appeal have consistently held that unavailability of counsel may constitute unforeseen or unavoidable circumstances to warrant a trial extension under CrR 3.3."); *State v. Krause*, 82 Wn. App. 688, 698, 919 P.2d 123 (1996) ("Conflicts in the prosecuting attorney's schedule may be considered 'unavoidable' circumstance justifying an extension of the speedy trial date under CrR 3.3.").

Here, the trial court based its October 4 order granting the State's first continuance motion on the prosecutor's previously scheduled vacation and on the prosecutor's assignment in a different trial. Although Kissler objected to the State's October 4 continuance motion, he did not argue that he would suffer any prejudice to his defense based on the delay. Because the prosecutor's scheduling conflicts were valid reasons for granting a continuance, and because Kissler did not demonstrate that he would be prejudiced by the continuance, the trial court did not abuse its discretion by continuing the start of trial. Accordingly, under CrR 3.3(e)(3) the period of this continuance is excluded from the computation of time Kissler had awaited trial while in custody.

The trial court similarly based its November 27 decision granting the State's second continuance motion on the prosecutor's assignment in a different trial. Although Kissler opposed the motion and argued that the State should have replaced the prosecutor trying his case, he did not assert that his defense was prejudiced by the delay. Accordingly, the trial court did

not abuse its discretion by granting the continuance, and the period of this continuance is excluded from the computation of Kissler's time awaiting trial.[2]

Excluding these valid continuances, the State had until February 6 to bring Kissler to trial. CrR 3.3(b)(1)(ii), (5). Kissler's trial commenced on February 5. Accordingly, even assuming that the trial court erred by granting the State's remaining continuance motions, Kissler's CrR 3.3 timely trial right would not be violated as a result and, thus, his contention on this issue fails.

## II. RIGHT TO COUNSEL

Next, Kissler asserts that the trial court violated his constitutional right to assistance of counsel when it allowed him to represent himself absent a knowing, intelligent, and voluntary waiver of his right to counsel. Specifically, Kissler contends that his waiver was not knowing, intelligent, and voluntary because the trial court misinformed him that, apart from his second degree assault charge, his remaining charges were class C felonies that carried a statutory maximum sentence of 5 years. In fact, his possession of a controlled substance with intent to deliver charge was a class B felony carrying a maximum sentence of 10 years. RCW 69.50.401(2)(a). Again, we disagree.

We review for an abuse of discretion a trial court's decision to grant a criminal defendant's request to represent himself or herself at trial. *State v. James*, 138 Wn. App. 628, 636, 158 P.3d 102 (2007). Criminal defendants have a constitutional right to self-representation under both the Sixth Amendment to the United States Constitution and article 1, section 22 of the

---

[2] Kissler contends that his standby counsel's scheduled vacation was not a valid reason for the trial court to grant the State's November 27 continuance motion, but we need not address this contention because the trial court based its continuance order on *both* standby counsel's vacation *and* the prosecutor's conflicting trial assignment.

Washington Constitution. "This right is so fundamental that it is afforded despite its potentially detrimental impact on both the defendant and the administration of justice." *State v. Madsen*, 168 Wn.2d 496, 503, 229 P.3d 714 (2010) (citing *Faretta v. California*, 422 U.S. 806, 834, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975)). The unjustified denial of the right to self-representation requires reversal. *State v. Stenson*, 132 Wn.2d 668, 737, 940 P.2d 1239 (1997).

A defendant's request to self-representation must be unequivocal. *State v. DeWeese*, 117 Wn.2d 369, 376, 816 P.2d 1 (1991). Once a defendant unequivocally invokes the right to self-representation, the trial court must determine if the defendant knowingly, intelligently, and voluntarily waives the right to counsel. *James*, 138 Wn. App. at 635. Our Supreme Court has explained the trial court's obligation in this regard as follows:

> The court should ascertain that the defendant makes the *Faretta* waiver with at least a minimal knowledge of the task involved. [*Bellevue v.*] *Acrey*, 103 Wn.2d [203,] 210[, 691 P.2d 957 (1984)]. A colloquy on the record is the preferred method; but in the absence of a colloquy, the record must reflect that the defendant understood the seriousness of the charge, the possible maximum penalty involved, and the existence of technical procedural rules governing the presentation of his defense. *Acrey*, 103 Wn.2d at 211. Whether the criminal defendant's waiver of the constitutional right to be represented by counsel at trial is valid depends on the facts and circumstances of each case, and there is no checklist of the particular legal risks and disadvantages attendant to waiver which must be recited to the defendant. [*State v.*] *Imus*, 37 Wn. App. [170,] 173-74[, 679 P.2d 376 (1984)].

*DeWeese*, 117 Wn.2d at 378.

Here, Kissler was adamant and unequivocal about his request to self-representation, explicitly stating that his decision to represent himself was not based on any issues with his assigned counsel. Although not required under the applicable case law, the trial court engaged in a lengthy colloquy with Kissler, in which the court: (1) asked if he understood each of the individual charges against him, to which Kissler responded affirmatively, (2) informed him that the trial court could not advise him on how to try his case, (3) informed him about the jury

selection process, (4) told him that he would need to abide by the rules of evidence and the superior court criminal rules, (5) informed him that he would have to decide whether to call witnesses, (6) informed him that if he chose to testify, he would have to present his testimony by asking himself questions and then by answering those questions, (7) asked him whether any threats or promises were made to induce his decision to represent himself, to which Kissler responded negatively, (8) informed him that the decision to appoint standby counsel was discretionary with the court, and (9) reviewed with Kissler the State's previous plea offer. The trial court further cautioned Kissler:

> I must advised [sic] you, in my opinion, you'd be far better off to be defended by a trained attorney who can represent you rather than representing yourself. I think it's unwise for you to try and represent yourself. This is a very complex case. Even though you've had some familiarity with criminal proceedings, looking at the LINX case record for you, I don't think you're familiar with the law that much by you planning on familiarizing yourself with court procedures and the rules of evidence. I don't think you've informed me that you really know about those things. You're going to have to learn about all those things. I would strongly urge you not to represent yourself.

Report of Proceedings (RP) (Sept. 11, 2012) at 9.

Kissler stated that he understood the difficulties he faced by representing himself and that he was voluntarily waiving his right to counsel in order to proceed pro se. In light of the trial court's detailed colloquy and advice, Kissler's statement was sufficiently unequivocal under *DeWeese* to ensure that Kissler "understood the seriousness of [his] charge[s], the possible maximum penalty involved, and the existence of technical procedural rules governing the presentation of his defense." 117 Wn.2d at 378.

As noted, the trial court misinformed Kissler that his charge for possession of a controlled substance with intent to deliver was a class C felony carrying a maximum sentence of 5 years. In fact, this offense is a class B felony carrying a maximum sentence of 10 years. The

trial court correctly informed him, though, that the maximum penalty he faced for his offenses was 10 years of incarceration. *DeWeese* does not require, and Kissler does not cite any case standing for the proposition that, trial courts must specify in detail the potential penalty as it relates to each of the defendant's charges before finding the defendant knowingly, intelligently, and voluntarily waived the right to counsel. In fact, in discussing penalties, *DeWeese*, 117 Wn.2d at 378, requires that the record reflect that the defendant "understood . . . the possible maximum penalty involved." When, as here, the defendant is correctly informed of the maximum penalty for all offenses, it is difficult to see how incorrect information about the penalty for an individual offense could make the waiver of the right to counsel less knowing. Accordingly, we affirm the trial court's order allowing Kissler to represent himself at trial.

Kissler also argues that his waiver of counsel was rendered invalid by the trial court's failure to inform him of the change in potential punishment when the State amended its information to include allegations of firearm sentencing enhancements. We disagree.

*United States v. Hantzis*, 625 F.3d 575, 581 (9th Cir. 2010), recognized that a new inquiry into self-representation may be required if "circumstances have sufficiently changed since the date of the *Faretta* inquiry that the defendant can no longer be considered to have knowingly and intelligently waived the right to counsel." In *State v. Modica*, 136 Wn. App. 434, 444-45, 149 P.3d 446 (2006), Division One of our court held that the trial court did not err by failing to sua sponte engage a defendant who had waived the right to counsel in a second full colloquy informing him of the maximum penalty after a new charge was added. In *Modica*, though, the court asked the defendant on two occasions after the charge was added whether he still wished to proceed pro se and on one occasion advised him again not to do so. *Modica*, 136 Wn. App. at 446. Here, in contrast, the trial court did not ask Kissler after the firearm

enhancements were added if he still wished to proceed pro se. Thus, *Modica* is of little instruction in this appeal.

*DeWeese*, however, is on point. As noted, to ensure a valid waiver of the right to counsel, the record must reflect, among other matters, that the defendant "understood . . . the possible maximum penalty involved." 117 Wn.2d at 378. Here, the trial court correctly informed Kissler before his waiver that his maximum penalty would not exceed 10 years. Under RCW 9.94A.599, the addition of the firearm enhancements could not extend Kissler's sentence beyond the maximum of 10 years. Therefore, the amendment of the charges to allege firearm sentencing enhancements did not make Kissler's waiver any less knowing, intelligent, or voluntary.

## III. Sentencing

### 1. Firearm Sentence Enhancements

Kissler contends that the trial court impermissibly imposed firearm sentence enhancements when the jury's special verdict instruction stated that the State had to prove beyond a reasonable doubt that he was armed with a "deadly weapon" during the commission of his crimes. CP at 193. We disagree.

Kissler argues that his firearm sentencing enhancements must be vacated in light of our Supreme Court's opinion in *State v. Williams-Walker*, 167 Wn.2d 889, 898-99, 225 P.3d 913 (2010). *Williams-Walker* held that the imposition of a firearm sentencing enhancement violates the defendant's constitutional right to a jury trial where the jury found by special verdict that the defendant was armed with a deadly weapon. This case is distinguishable, however, as here the State charged Kissler with a firearm enhancement and the jury found by special verdict that he was armed with a "firearm" during the commission of his offenses. CP at 151-52. Thus, the

12

issue here is not whether the trial court imposed a firearm enhancement absent a jury finding in violation of Kissler's constitutional jury trial right, as in *Williams-Walker*. 167 Wn.2d at 899-900. Rather, the issue presented is whether the trial court erroneously instructed the jury on the requirements in reaching its firearm finding. The trial court's special verdict instruction stated:

> For purposes of a special verdict, the State must prove beyond a reasonable doubt that the defendant was armed with a *deadly weapon* at the time of the commission of the crime.
> A person is armed with a deadly weapon if at the time of the commission of the crime the weapon is easily accessible and readily available for offensive or defensive purposes. The State must prove beyond a reasonable doubt that there was a connection between the weapon and the defendant. The State must also prove beyond a reasonable doubt that there was a connection between the weapon and the crime. In determining whether these connections existed, you should consider among other factors the nature of the crime and the circumstances surrounding the commission of the crime.
> A pistol, revolver, or any other firearm is a deadly weapon whether loaded or unloaded.

CP at 193 (emphasis added). Kissler did not object to this instruction and, thus, waived his contention with the instruction on appeal. *State v. Bailey*, 114 Wn.2d 340, 345, 787 P.2d 1378 (1990). A pro se litigant is held to the same standard as an attorney. *See, e.g., State v. Bebb*, 108 Wn.2d 515, 524, 740 P.2d 829 (1987) (pro se defendants must conform to substantive and procedural rules and courts are under no duty to inform a pro se defendant of the relevant rules of law); *State v. Smith*, 104 Wn.2d 497, 508, 707 P.2d 1306 (1985) (a pro se litigant must comply with all applicable procedural rules). Further, even if Kissler had not waived this issue on appeal, any error in the trial court's instruction was harmless.

The instruction provided by the trial court differs from the standard firearm enhancement jury instruction, 11 *Washington Pattern Jury Instructions: Criminal* (WPIC) 2.10.01, at 54 (3d ed. 2008), in that it only replaced "firearm" with "deadly weapon," and replaced the phrase, "A 'firearm' is a weapon or device from which a projectile may be fired by an explosive such as

13

gunpowder," with "A pistol, revolver, or any other firearm is a deadly weapon whether loaded or unloaded." WPIC 2.10.01; CP at 193. The trial court's error in replacing "firearm" with "deadly weapon" was harmless in light of the jury's special verdict form, which required the jury to find that Kissler was armed with a "firearm" in order to return the special verdict. In addition, the trial court's omission of the specific definition of a firearm as "a weapon or device from which a projectile may be fired by an explosive such as gunpowder" was harmless in light of Kissler's stipulation that the firearm at issue was "operational and capable of firing projectiles." CP at 83. Accordingly, we affirm the trial court's imposition of firearm sentence enhancements.

2.  Variable Community Custody Term

Next, Kissler asserts that the trial court erred by imposing a variable term of community custody. The State concedes error. We accept the State's concession and remand for a correction of Kissler's sentence.

> RCW 9.94A.701 provides in relevant part:
>
> (3) A court shall, in addition to the other terms of the sentence, sentence an offender to community custody for one year when the court sentences the person to the custody of the department for:
>
> . . . .
>
> (c) A felony offense under chapter 69.50 . . . RCW, committed on or after July 1, 2000;
>
> . . . .
>
> (9) The term of community custody specified by this section shall be reduced by the court whenever an offender's standard range term of confinement in combination with the term of community custody exceeds the statutory maximum for the crime as provided in RCW 9A.20.021.

Under RCW 9.94A.701, "a court may no longer sentence an offender to a variable term of community custody [that is] contingent on the amount of earned release but instead, it must determine the precise length of community custody at the time of sentencing." *State v. Franklin*, 172 Wn.2d 831, 836, 263 P.3d 585 (2011). Here, the trial court sentenced Kissler to 120 months

14

of incarceration for his unlawful possession of a controlled substance with intent to deliver conviction with a firearm enhancement, the statutory maximum sentence for that offense. Therefore, the trial court was required under RCW 9.94A.701(9) to reduce Kissler's community custody term to zero. The trial court's variable community custody term does not comport with RCW 9.94A.701. *Franklin*, 172 Wn.2d at 836. Accordingly, we remand to the trial court to issue a corrected judgment and sentence consistent with this opinion.

## IV. STATEMENT OF ADDITIONAL GROUNDS (SAG)

In his SAG, Kissler first repeats his appellate counsel's contention that the trial court violated his CrR 3.3 timely trial right. Because we have rejected this contention as argued by appellate counsel, we do not readdress it here.

Next, Kissler contends in his SAG that the trial court violated his right to counsel when it allowed the trial to commence without standby counsel present. Kissler, however, waived his right to the assistance of counsel, and there is no corresponding constitutional right to the assistance of standby counsel. *See State v. Silva*, 107 Wn. App. 605, 626-27, 27 P.3d 663 (2001) ("[T]here is no federal constitutional right to standby counsel and no Sixth Amendment right to hybrid representation wherein a defendant serves as co-counsel with his attorney. Moreover, once a defendant has validly waived his right to counsel, he may not later demand the assistance of counsel as a matter of right." (Internal footnotes omitted.)). Further, even if Kissler had a right to the assistance of standby counsel, he waived that right at the start of trial after engaging in a colloquy with the trial court. Accordingly, Kissler's claim that the trial court violated his right to counsel by allowing him to proceed without the benefit of standby counsel lacks merit.

Finally, Kissler contends in his SAG that the trial court erred by failing to suppress evidence and witness testimony based on the State's late discovery. Kissler did not move the

trial court to suppress evidence based on the State's late discovery. Because he does not claim in this appeal that the admission of this evidence violated either the state or federal constitution, he may not raise the issue for the first time on appeal under RAP 2.5(a)(3). Accordingly, we do not further address this contention.

We affirm Kissler's convictions and the trial court's imposition of firearm sentencing enhancements, but remand for a correction of Kissler's sentence with regard to his improper variable community custody term.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJORGEN, J.

We concur:

JOHANSON, C.J.

MELNICK, J.